UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN LAMAR GREEN,

    Petitioner,

v.

S.L. BURT,

    Respondent.

Case No. 16-10249
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

## OPINION AND ORDER DENYING
## PETITION FOR A WRIT OF HABEAS CORPUS [1]

Quentin Lamar Green was a teenager when he participated in a robbery. The robbery turned into a shootout that left one victim dead and another paralyzed. A Genesee County jury convicted Green of felony-murder, Mich. Comp. Laws § 750.316(b), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and felony firearm, Mich. Comp. Laws § 750.227b(1). The convictions led to a nonparolable life sentence. On direct appeal, the state courts affirmed Green's convictions.

Through counsel, he now petitions this Court for a writ of habeas corpus. Green says he was denied a fair trial, was not allowed to present a complete defense, and received ineffective assistance of counsel. Because Green's claims lack merit, the Court will deny Green's petition.

**I.**

On December 12, 2010, a snowstorm kept Remecoe Baker from work. (ECF No. 5, PageID.916–917.) So he picked up his girlfriend, Shadrekis Jackson, and drove to his uncle Tim's house. (*Id.* at PageID.917–918.) Tim Baker lived on West Ridgeway in Flint, Michigan. (ECF No. 5, PageID.852.)

Remecoe and Jackson fell asleep watching a movie. (ECF No. 5, PageID.1164.) Sometime after 7 pm, Jackson woke up when she heard Tim's cell phone ring. (*Id.* at PageID.852–853, 1164–1165.) But she drifted off until a short time later, when both Remecoe and Jackson awoke to someone knocking on the door. (*Id.* at PageID.1165.) Tim opened it and let in at least one person. (*Id.* at PageID.1166.) But more rushed in behind him. (*Id.* at PageID.923, 1167.)

Soon after the men rushed in, one of them said "don't move," and the shooting started. (*Id.* at PageID.1168, 71, 923–924.) Remecoe was shot twice in the arm; he fled to the basement and hid under the stairs. (*Id.* at PageID.924–925, 929–930.) Jackson was shot in the neck; she rolled onto the floor and played dead. (*Id.* at PageID.1169–1172.) Jackson was unable to move but saw and heard what happened next. (*Id.*)

Meanwhile, the shooting moved outside. (ECF No. 5, PageID.929, 1171.) Tim fired from his porch and witnesses remember seeing one of the men drive away in a dark sedan. (*Id.* at PageID.1029, 1063, 1066–1067.) The remaining three men exchanged fire with Tim. (*Id.* at PageID.1067–1068.) Shot multiple times, Tim fell and crawled to his neighbor's house. (*Id.* at 1072–1073.) Once there, his neighbor called 911, telling the dispatcher about multiple shooters. (*Id.* at PageID.1028.)

The shooting stopped when Tim fell. Then the three men reentered Tim's house. (ECF No. 5, PageID.1172.) One wore red, the others black. (*Id.* at PageID.1173.) Jackson remembers hearing a man dressed in red say "I just killed this bitch." (*Id.* at PageID.1176.) And she remembers the men rummaging around the house as if looking for something. (*Id.* at PageID.1177.)

At least two of the men ventured into the basement. (ECF No. 5, PageID.931.) Remecoe, still hiding under the stairs, remembers one of the men directing another to "go back upstairs and check, finish checking." (*Id.*) And Remecoe heard people upstairs "tearing stuff up." (*Id.* at

PageID.932.) He also remembers one of the men saying "I didn't try to shoot—shoot to kill this bitch." (*Id.*)

Police responded to reports of a shooting on West Ridgeway. (ECF No. 5, PageID.1257–1258.) Amid heavy snowfall, Troopers Michael Troutt and William Huey arrived at Tim's house. (*Id.* at PageID.1258–1259.) Immediately, they saw two men on one side of the house. (*Id.* at PageID.1259.) Huey got out and chased after the pair, and then Troutt noticed a third man, dressed in red, appear from the other side of Tim's house. (*Id.* at PageId.1260–1261.) Troutt chased that man. (*Id.* at PageId.1262.) Eventually, Troutt arrested the man in red, and other officers arrested the men in black. (*Id.* at PageId.1265, 1377, 1303.) And after backtracking all the footprints through the snow, police recovered a black stocking cap and a .45 caliber handgun along the route of Huey's foot chase. (*Id.* at PageId.1367.)

Paramedics responded as well. (ECF No. 5, PageID.1032.) They tended to Jackson and Remecoe, who survived their injuries. Tim did not. (*Id.* at PageID.2085.) Jackson remains paralyzed. (*Id.* at PageID.843.)

**A.**

The men in black were Quentin Green and Latrell Windom. The man in red was Devonte Reid. Corey Bracy-Bradley was the fourth man, the one who drove away while the shooting was going on. All were eventually charged.

Green, Windom, and Reid were tried together, each before their own jury. Bracy-Bradley pleaded guilty in exchange for his testimony against the others. Eventually, Green was convicted of felony murder, assault with intent to commit murder, and felony firearm. (ECF No. 5, PageID.2519–2520.) Reid, too, was convicted of felony-murder, while Windom was convicted of second-degree murder. *See People v. Reid*, No. 312492, 2014 WL 1614524, at *1–4 (Mich. Ct.

App. Apr. 22, 2014). The Michigan Court of Appeals consolidated the cases for appeal and affirmed all the convictions. *Reid*, 2014 WL 1614524, at *1–4. And the Michigan Supreme Court denied leave to appeal. *People v. Reid*, 854 N.W.2d 883 (2014).

Currently serving a sentence of life in prison without the possibility of parole, Green petitions this Court for a writ of habeas corpus. (ECF No. 1, PageID.1.)

## II.

The Antiterrorism and Effective Death Penalty Act governs Green's petition. AEDPA "demonstrates Congress's intent to channel prisoners' claims first into state courts." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). So where a state court adjudicates a petitioner's claims "on the merits" relief shall not be granted unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The statute restricts a federal court's power to upset state criminal convictions. 28 U.S.C. § 2254(d). AEDPA's "difficult to meet" standard allows a federal court to grant relief only "in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## III.

Green raises six claims. (ECF No. 1, PageID.3.) He points to three instances where he says he was denied a fair trial, two instances where he says his lawyer afforded ineffective assistance of counsel, and one instance where he says he was denied the right to present a complete defense.

## A.

Green believes his trial was fundamentally unfair because the judge permitted the state to shackle Green's legs during trial.[1] (ECF No. 1, PageID.8.)

Green raised this claim on direct appeal. And the Michigan Court of Appeals rejected it. *See Reid*, 2014 WL 1614524, at *11–15, 39–40. The court of appeals reasoned that even though the trial court did not make specific findings justifying the shackles, the record established their need. *Id.* at *11–15. Plus, the record offered nothing to suggest the jurors ever saw Green's shackles. *Id.* at *15, 40. So the Michigan Court of Appeals concluded that Green suffered no deprivation of due process. *Id.* at *40.

Green argues the Michigan Court of Appeals unreasonably applied *Deck v. Missouri*, 544 U.S. 622 (2005). (ECF No. 1, PageID.42–43.) *Deck* holds that the visible shackling of a criminal defendant at trial violates the due process clause absent the articulation of an essential state interest justifying the shackling. *Deck*, 544 U.S. at 624. Green says the trial court never put on the record an "essential state interest" justifying the restraints. (ECF No. 1, PageID.43–44.) And Green says the jury may have seen the shackles—leading them to presume him guilty. (*Id.* at PageID.44.) So the potentially visible shackles, absent any explanation from the judge, denied him a fair trial. (*Id.*)

Green's codefendant, Devonte Reid, was also shackled during their trial. And Reid's petition for a writ of habeas corpus, brought before District Judge John O'Meara, challenged the relevant portions of the Michigan Court of Appeals' opinion. *See* Petition for Writ of Habeas Corpus at 34, *Reid v. Balcarcel*, No. 16-10142 (E.D. Mich. April 27, 2018). Earlier this year, Judge

---

[1] The Warden insists this claim is procedurally defaulted. (ECF No. 4, PageID.109.) But because the Warden's procedural default argument wades into unsettled waters, and because procedural default is not jurisdictional, the Court will address the merits. *See Lyons v. Bergh*, No. 15-13097, 2018 U.S. Dist. LEXIS 156061, at *5–12 (E.D. Mich. Sept. 13, 2018).

O'Meara denied Reid's petition, including the shackling claim. *See Reid v. Balcarcel*, No. 16-10142, 2018 U.S. Dist. LEXIS 70988, at *13–17 (E.D. Mich. April 27, 2018). Judge O'Meara held that the Michigan Court of Appeals reasonably applied *Deck*, largely because Reid offered nothing to show that the jury actually saw the shackles. *Id.* at *15. So Reid could clear neither § 2254(d) nor § 2254(e)(1). *Id.* Then the Sixth Circuit denied Reid a certificate of appeal, affirming Judge O'Meara's disposition of the shackling claim. *See Reid v. Balcarcel*, No. 18-1596, slip op. at 3 (6th Cir. July 31, 2018).

Green's shackling claim runs parallel to Reid's shackling claim. And both claims challenge the same parts of the Michigan Court of Appeals' opinion. Therefore, the Court adopts the portion of Judge O'Meara's opinion denying Reid's shackling claim. So Green cannot overcome two obstacles to relief. First, the Michigan Court of Appeals reasonably found that the jurors did not see the shackles. At best, Green thinks the jurors might have seen or heard them. (ECF No. 43–44.) But Green does not offer clear and convincing evidence to rebut the state court's factual finding. *See* 28 U.S.C. § 2254(e)(1). And as a result, the Michigan Court of Appeals did not unreasonably apply *Deck*, which identifies a due process violation stemming solely from visible shackling during trial. *See Mendoza v. Berghuis*, 544 F.3d 650, 654–55 (6th Cir. 2008). Thus, the state courts did not unreasonably apply Supreme Court precedent. Green's shackling claim does not merit habeas corpus relief.

**B.**

Next Green says he was deprived of a fair trial when his lawyer called Jalen Walker as a witness. (ECF No. 1, PageID.2.) Walker ended up taking the stand only to invoke his Fifth Amendment right against self-incrimination. (ECF No. 5, PageID.2168.) Green thinks the jury inferred that Walker pleaded the Fifth to protect Green, which, in turn, implied Green was guilty.

(ECF No. 1, PageID.31.) Green believes the prosecutor knew in advance that Walker would take the Fifth, and so the prosecutor should have told Green's lawyer beforehand. And once Walker invoked the Fifth, Green says the judge should have immunized Walker on the spot. Or, at a minimum, the judge should have issued a neutralizing instruction to the jury. (*Id.*) So Green says that both the prosecutor and judge deprived him of a fair trial.

Understanding Green's claims requires a bit more factual background. Initially, the Michigan Court of Appeals granted Green's motion to remand so the trial court could conduct a hearing to learn more about the events leading up to Walker's testimony. *Reid*, 2014 WL 1614524, at *31. And at the hearing, Green's lawyer said he subpoenaed Walker to testify, hoping to use Walker's testimony to impeach Bracy-Bradley. *Reid*, 2014 WL 1614524, at *32. But Green was never able to interview Walker. *Id.* Walker was also on the prosecution's initial witness list, apparently because Walker had some connection to the gun Bracy-Bradley said he brought to the robbery. *Id.* at *33. But because Walker's testimony pertained only to Bracy-Bradley, who pleaded guilty, the prosecution opted not to call Walker. *Id.* Yet when the prosecutor found out that Green's lawyer intended to call Walker, the prosecutor asked a detective to interview Walker to "just find out what is he gonna say, because this isn't someone we had contact with yet." *Id.* at *31. The detective did so, and, about 10 to 20 minutes before Walker took the stand, the detective told the prosecutor that Walker intended to take the fifth. *Id.* But the prosecutor suspected Walker was bluffing, so the prosecutor said nothing to Green's lawyer. And the prosecutor insisted he "did not know what Walker" planned to say. *Id.* Even so, Green's lawyer was upset, believing the prosecutor sat on the information. *Id.* And had Green's lawyer been informed, he said he would have asked for a hearing rather than call Walker. *Id.* at *33.

7

Eventually, the Michigan Court of Appeals denied relief. Given the testimony at the hearing, Green could not show the prosecution intended to bolster its case by using Walker's invocation. *Id.* \*35. The prosecution neither called nor questioned Walker, and the prosecution never mentioned Walker's testimony in closing. *Id.* And before Walker took the stand the prosecutors were, at best, unsure what Walker would testify to. *Id.* at PageID.35–36. So Green could not establish a due process violation flowing from Walker's assertion of his Fifth Amendment right against self-incrimination.

Green takes issue with the court of appeals' conclusion. (ECF No. 1, PageID.36.) But he does not point to any clearly established Supreme Court precedent contrary to it. Nor does he cite to any Supreme Court precedent he thinks the court of appeals unreasonably applied.

There is some precedent in this area. The Supreme Court has held that a prosecution built upon inferences drawn from a witness' invocation raises serious concerns, especially where the witness was engaged in criminal activity with the defendant. *Namet v. United States*, 373 U.S. 179, 185–86 (1963). And a "prosecutor's act of forcing a witness to claim the Fifth Amendment privilege could create an inference unfavorable to the defendant, particularly when the witness is someone whom the jury would associate with the defendant." *Thomas v. Garraghty*, 18 F. App'x 301, 306–09 (6th Cir. 2001).

But Green cannot clear § 2254(d). Green called Walker, not the state. And the Michigan Court of Appeals rightly points out that the prosecution never questioned Walker and never asked the jury to infer Green's guilt from Walker's invocation. So the prosecutor never forced anything out of Walker. Plus, even if the prosecutor had an inkling of Walker's intention to invoke the Fifth Amendment, the state did not use his invocation to their benefit. Thus, the prosecution did not "make[] a conscious and flagrant attempt to build its case out of inferences arising from use of the

testimonial privilege." *Namet*, 373 U.S. at 186; *see also Garraghty*, 18 F. App'x at 311. So Green is not entitled to relief.

And to the extent Green thinks the trial court erred in refusing to instruct the jury that they could not draw an inference either way from Walker's invocation, he raised this issue on direct appeal. (ECF No. 5, PageID.2667.) And even though the Michigan Court of Appeals did not expressly address the claim, the Court presumes the state court adjudicated it on the merits. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013).

To obtain relief on habeas corpus review, Green must shoulder a heavy burden. The question is not merely whether the missing instruction is undesirable, erroneous, or even "universally condemned," but whether its absence so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbee*, 431 U.S. 145, 154–155 (1977). And an omitted or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Id.*

Green cannot show that the trial judge's decision not to issue a neutralizing instruction "infected" the entire trial. Green is right that the jury likely connected Walker's invocation with guilt of some kind. But Walker was called as a defense witness, and Green does not explain how the jury might leap to a conclusion about *his* guilt. As already mentioned, the admitted evidence did not connect Walker to Green at all. And the prosecution never tried to connect the two. Walker was neither arrested nor charged in connection with the shooting on West Ridgeway. At most, it appears Walker had some connection to Bracy-Bradley—a connection formed after the events at issue. And the state never attempted to build its case on Walker's invocation. So there is little reason to think the jury inferred that Green was likely guilty of the charged offense because Walker thought he might be guilty of something. So the missing instruction did not render Green's conviction a violation of due process. His claim does not merit relief.

Finally Green thinks the trial court should have immunized Walker right then and there. But "Defendants have no compulsory process right to have their witnesses immunized." *United States v. Lenz*, 616 F.2d 960, 962 (6th Cir. 1980). The Sixth Circuit has held that "compelled judicial use immunity would raise separation of powers concerns, because the decision of whom to prosecute is soundly within the discretion of the prosecutors and not the courts." *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999). And Green has pointed to no Supreme Court precedent to the contrary. Green is not entitled to relief.

## C.

Next Green says his trial was fundamentally unfair because the trial court permitted the jurors to submit questions directly to the witnesses. (ECF No. 1, PageID.46–48.) Jurors asked questions of witnesses because Michigan Court Rule 2.513(I) allows them to do so. *See* Mich. Ct. R. 2.513(I). Green thinks the rule violates due process. (ECF No. 1, PageID.46.) Facially, and as applied to his case, Green says the rule upsets the jury's role in the adversarial process, in ways "inconsistent with their responsibility to be impartial arbiters of justice." (ECF No. 1, PageID.46.)

Green also thinks the Michigan Court of Appeals ignored his due process claim. *But see Reid*, 2014 WL 1614524 at *40 (rejecting Green's argument that the rule "has the practical effect of luring jurors into a role that is inconsistent with their responsibility to be impartial arbiters of justice."). As he thinks the state court never adjudicated his claim on the merits, he says AEDPA does not apply. (*Id.* at PageID.46–47.) So the Court should review his claims *de novo*.

However, AEDPA applies. On direct appeal, Green certainly raised a due-process challenge to Rule 2.513(I). (ECF No. 5, PageID.2695.) And the state court acknowledged it. *See Reid*, 2014 WL 1614524, at *15, 40. And though the state court rejected the due-process claim based entirely on citations to state law, *see Reid*, 2014 WL 1614524, at *15–17, a state court may

still adjudicate the merits of a federal claim by citing only to state law. *See Johnson*, 568 U.S. at 298–99. Especially where state law "is at least as protective" as federal law. *See Johnson*, 568 U.S. at 301. Here, Michigan Court Rule 2.513(I) tracks controlling Sixth Circuit precedent permitting jurors to question witnesses. *Compare* Mich. Ct. R. 2.513(I), *with United States v. Collins*, 226 F.3d 457, 464 (6th Cir. 2000); *see also Larose v. Bell*, No. 09-14911, 2012 U.S. Dist. LEXIS 21602, at *29 (E.D. Mich. Feb. 21, 2012). So, presumably, the Michigan Court of Appeals held that Rule 2.513(I)—facially and as applied—did not violate federal due process law.

Green, again, cannot surmount § 2254(d). At a minimum, Green has a baseline fair-trial right to an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 721–22 (1961). And beyond the baseline right, no clearly established Supreme Court caselaw holds that, as a general matter, juror questioning of witnesses renders a jury trial fundamentally unfair. *See Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (finding that no Supreme Court precedent holds that juror questioning of witnesses violates the Sixth or Fourteenth Amendments); *Larose*, 2012 U.S. Dist. LEXIS 21602 at *29. So Green is left to argue that the juror questions made his trial fundamentally unfair. But controlling state and federal authority sanction the practice of juror questioning. *See Collins*, 226 F.3d at 464; *People v. Heard*, 200 N.W.2d 73 (Mich. 1973). And in an attempt to mitigate the risks of the practice, the trial judge explicitly instructed the jurors how to ask questions given that they were to be factfinders with open minds throughout the trial. (ECF No. 5, PageID.827–832.) Indeed, most of the jurors' questions sought factual information. (*See, e.g.*, id. at PageID.1355–1356.) And most of the jurors' questions highlighted their open minds. (*See, e.g.*, id. at PageID.1807–1816.) Green even acknowledges that, when necessary, the trial court gave defense counsel an opportunity to see the questions before the trial court asked them. (*See, e.g.*, ECF No. 5, PageID.1356; ECF No. 1, PageID.46.) So, to the extent the Michigan Court of Appeals

held that Rule 2.513(I) comports with the Due Process Clause, the state court's decision was neither an "unreasonable application of" nor "contrary to" Supreme Court precedent.

****

In sum, Green cannot establish a violation of his due process right to a fair trial. None of his due process claims clear AEDPA's high bar to relief.

## D.

Green next claims he was denied his right to present a complete defense when the trial court prevented Green from calling his sister as a witness. To understand this claim, again, a few more facts are necessary.

Shakalya Eaton is Green's sister, and she told her story to Windom's jury. (ECF No. 5, PageID.2186.) Eaton told Windom's jury that on the night of the shooting, Eaton was with Bracy-Bradley's girlfriend. (*Id.* at PageID.2188.) Not long after the shooting, Eaton and Bracy-Bradley's girlfriend found Bracy-Bradley. (*Id.* at PageID.2190.) And that night, Bracy-Bradley told Eaton a much different story than the one Bracy-Bradley told the three juries. (*Compare* ECF No. 5, PageID.2190–2195, *with* ECF No. 5, PageID.1516–1542.) So Green hoped to use Eaton's testimony to undercut Bracy-Bradley's testimony.

But the trial court excluded Eaton from Green's witness list. Green's lawyer did not disclose Eaton as a witness until three days into trial. *Reid*, 2014 WL 1614524, at *18. And a Michigan court rule requires the parties disclose witnesses at least 28 days prior to trial. *See* Mich. Ct. R. 6.201(a)(1). Primarily, the trial court relied on Rule 6.201(a)(1) as the basis for denying Green's tardy request to add Eaton to the witness list.[2] Plus the trial court had concerns that Eaton

---

[2] As part of the Rule 5 materials, the Respondent did not include a transcript from June 7, 2012, the date on which the trial court first ruled on this issue. However, Green does not make an issue out of Respondent's omission. And while Rule 5(c) of the Rules Governing Habeas Corpus

12

is Green's sister. And there was some controversy over whether Eaton avoided an interview with detectives investigating the shooting. (ECF No. 5, PageID.2156–2157.) So Green did not get the benefit of Eaton's testimony to impeach Bracy-Bradley. And as Windom ended up getting convicted of a lesser offense (second-degree murder), Green thinks Eaton's exclusion prejudiced him. (ECF No. 1, PageID.41.)

The Michigan Court of Appeals adjudicated this claim on the merits. And the state court noted that the Constitution guarantees a criminal defendant the right to present a defense. *Reid*, 2014 WL 1614524, at *18. But the state court reasoned that the right is subject to state rules of procedure "'designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Reid*, 2014 WL 1614524, at *39 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). So the trial court excluded Eaton because Green's lawyer did not follow a state rule requiring timely disclosure of witnesses. Eaton's late addition gave rise to legitimate concerns of gamesmanship, especially considering the fact Eaton was Green's relative, she may have avoided an interview with police, and nothing in the recorded indicated she was previously unavailable. *Id.*

Green insists the Michigan Court of Appeals unreasonably applied *Crane v. Kentucky*, 476 U.S. 683 (1986). *Crane* reaffirms that a criminal defendant has a fundamental right to establish a defense. *Crane*, 476 U.S. at 690 ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967).

---

Proceedings allows the Court to *sua sponte* order the Respondent to produce the materials, the Michigan Court of Appeals opinion provides enough information to determine the bases for the trial court's ruling on this issue.

True, Green's right to present a complete defense includes the right to "offer the testimony of witnesses." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). But the Sixth Amendment does not go so far as to strike down state rules governing the disclosure of witnesses to the other side. *Rockwell v. Yukins*, 341 F.3d 507, 511–12 (6th Cir. 2003) ("But the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." (quoting *Crane*, 476 U.S. at 690)). So a criminal defendant's Sixth Amendment right to a complete defense must comport with a framework of procedural rules necessary to ensure an orderly trial. *Taylor*, 484 U.S. at 410–11 ("The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.").

Given the clearly established law, Green cannot show that it was objectively unreasonable for the state courts to exclude Eaton's testimony. Green's lawyer failed to abide by a state court rule. And, pursuant to that rule, the trial court denied Green's lawyer's untimely request to add Eaton to the witness list. Even more, Green's counsel was aware of Eaton's proposed testimony, yet failed to disclose her as a witness before the trial commenced. So the Michigan Court of Appeals reasonably excluded Eaton's testimony without violating Green's Sixth Amendment right to a complete defense. *See Fleming v. Metrish*, 556 F.3d 520, 535–36 (6th Cir. 2009); *United States v. Sheldon*, 223 F. App'x 478, 484 (6th Cir. 2007).

E.

That leaves Green's claims that his lawyer twice provided ineffective assistance of counsel. Green says the first instance occurred when his lawyer called Walker without first conducting an

14

interview. And after Walker asserted his Fifth Amendment rights, the second instance occurred when Green's lawyer failed to ask the judge to immunize Walker at that moment.

"A claim of ineffective assistance of counsel has two prongs." *Phillips v. Hoffner*, -- F. App'x --, No. 17-1012, 2018 U.S. App. LEXIS 31219, at *22 (6th Cir Nov. 5, 2018). The deficient performance prong requires Green to show his lawyer's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). And Green must show prejudice, which means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Strickland* is itself a high bar to relief, and habeas corpus review raises it higher still. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). So, where AEDPA applies, the issue is whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The Michigan Court of Appeals adjudicated Green's ineffective-assistance claims on the merits. And the state court concluded that Green's counsel's performance did not dip below the level of effective assistance required by the Sixth Amendment. *Reid*, 2014 WL 1614524, at *37–38. The Michigan Court of Appeals also thought that even if it was ineffective assistance for Green's counsel not to have interviewed Walker before calling him to the stand, Green cannot show prejudice given the other evidence of his guilt. *Id.* at *38. And as for the second instance, the appellate court referenced the trial court noting that Green's lawyer believed he had no basis to ask the judge to immunize Walker. *Id.* at *33.

The state court reasonably rejected Green's claims. For one, the state court reasonably concluded that Green's counsel had no basis to ask the judge to immunize Walker. And it reasonably concluded that Green could not show prejudice as a result of his lawyer's failure to interview Walker. Most importantly, Walker had no connection to the events underlying the

15

charged offenses. And the prosecution never tried to connect him to the events, or Green. Plus, ample evidence tied Green to the robbery and shooting. *See, e.g.*, ECF No. 5, PageID.1890–1910. So Green cannot obtain relief on his ineffective-assistance claims.

## IV.

For the foregoing reasons, it is ORDERED that the petition for a writ of habeas corpus is DENIED. The Court also believes that no reasonable jurist would find that the claims presented have merit, so a certificate of appealability will not issue from this Court. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if petitioner nonetheless chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: December 13, 2018

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, December 13, 2018, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager